IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA,

    Plaintiff,

v.

MARIO BERGREN, et al.,

    Defendants.

No. C 12-00119 SI

**ORDER DENYING MOTION TO SUPPRESS**

On March 18, 2014, the Court heard oral argument on defendant Mario Bergren's motion to suppress evidence. Having considered the arguments of counsel and the papers submitted, the Court DENIES the defendant's motion.

**BACKGROUND**

In July, 2012, the grand jury returned a thirty-two count indictment, charging defendant Mario Bergren, and eighteen other individuals, with multiple criminal acts, including violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"). Defendant Bergren is charged in four of those counts: (1) RICO conspiracy; (2) conspiracy to commit murder; (3) conspiracy to commit assaults; and (4) use of firearms in furtherance of crimes of violence.

The events leading up to this motion began in early 2010. On February 20, 2010, at approximately 9 p.m., the defendant was involved in a vehicular shooting incident in South San Francisco. Declaration of Counsel in Support of Motion to Suppress Evidence Seized Pursuant to Search Warrant ("Boisseau Decl.") Ex. A, at MB-000012. The defendant is an alleged member of the

C Street gang, a Norteño faction. *Id.* The shoot-out involved the defendant and members of a rival Sureño gang. *Id.*

Following the shoot-out, the defendant relayed the following facts to the police. The defendant told the police that, as he was driving that evening, he saw a dark blue Ford Explorer. *Id.* at MB-000013. The occupants of the Explorer shot at him three times. *Id.* The Explorer chased him in his vehicle until he reached a police station. *Id.* The defendant was unaware of whether the Explorer's occupants shot at him again while they were driving. *Id.*

On February 23, 2010, police located the Ford Explorer that had been involved in the shooting incident. *Id.* at MB-000020. When the police examined the vehicle they found two bullet holes and a fragmented bullet. *Id.* The fragmented bullet was sent to the San Mateo County Crime Lab for analysis. *Id.*

On March 26, 2010, at approximately 11 p.m., police responded to a report of a shooting into an inhabited dwelling in South San Francisco. Boisseau Decl. Ex. B, at 000059. The police gathered the following relevant information regarding possible suspects for the shooting. The first witness was standing across the street at the time someone shot into the residence. *Id.* at 000060. She heard a single gunshot, and saw an adult Hispanic male standing in front of the window of the residence. *Id.* He had a hood up over his head and was holding a pistol in his right hand. *Id.* The witness thought the pistol was possibly black. He then ran from the scene. The witness thought the person she saw was between sixteen and eighteen years old, between 130-150 pounds, and was wearing dark clothes. *Id.* at 000070. The second witness was a teenage boy who lived in the residence, who police suspected of being connected to the Sureños. He did not see who shot at his house, but he told police that, approximately thirty minutes prior to the shooting he saw two Norteños near his home. *Id.* at 000063. Although he thought he recognized one of the subjects from his high school, he could not identify him by name. *Id.* The police recovered a bullet from the interior of the residence, and sent it to the San Mateo County Crime Lab for analysis. Boisseau Decl. Ex. A, at MB-000023. The lab determined that the bullet taken from the residence was fired from the same gun as the fragmented bullet recovered from the Ford Explorer. *Id.*

On August 30, 2010, a Confidential Information ("CI") came to the South San Francisco Police Department and said she wanted to make a statement about the vehicle shoot-out on February 20, 2010. *Id.* at MB-000013. The CI said she feared the defendant, and wanted to start a new life away from the defendant and the gang life. *Id.* at MB-000013-14. The CI did not request any compensation in exchange for her statement. *Id.* at MB-000013.

The CI then gave the police a different version of the events of February 20, 2010 from the one defendant had previously given. The CI stated that she was in the defendant's car with him that evening. *Id.* at MB-000014. Three of the defendant's friends were traveling in a gray Honda, directly behind the defendant's car. *Id.* Both cars approached a location on South Spruce Street, where a Ford Explorer was parked. *Id.* at MB-000015. The CI saw one occupant of the Explorer kick another in the face. *Id.* The CI assumed that the kick was part of a gang-related "jumping in" ritual. *Id.* One of the defendant's friends, traveling in the gray Honda, yelled "rata!" ("rat" in Spanish). *Id.* One of the Honda's occupants got out of the car and chased one of the Explorer's occupants away, on foot. *Id.*

The Explorer drove off, and parked again approximately one block away. *Id.* Both the defendant's car and the Honda drove off past the Explorer, then executed u-turns and drove back toward to the Explorer. *Id.* at MB-000016. As the defendant's car approached the Explorer, the CI saw that someone was outside the Explorer, pointing a gun at the oncoming cars. *Id.* Someone from the Honda fired repeatedly at the Explorer as the Honda drove past. *Id.* at MB-000017. The defendant continued to drive, and the Explorer pursued him. *Id.* The CI then saw the defendant reach under the seat of his car and produce a .25 caliber silver pistol, with wood handles. *Id.*

As the vehicle chase continued, the Explorer bumped the back of the defendant's car. *Id.* at MB-000018. The CI heard approximately two shots fired from the Explorer. *Id.* The defendant lost control of his car and drove up onto a center island. *Id.* While the defendant's car was on the island, approximately five more shots were fired from the Explorer. *Id.* at MB-000019. The defendant then fired two shots at the Explorer, over the roof of his car. *Id.*

As the defendant drove toward the police station, the CI called 911 for help. The CI stated that she did not tell the police the true story at that time because she was afraid that the defendant "might retaliate in a violent manner." *Id.* at MB-000020. The CI stated that the police never searched the

3

defendant's car that night, but if they had they would have found the gun he used to shoot at the Explorer. *Id.*

The CI also stated that she was with the defendant on March 26, 2010 – the night of the residential shooting. *Id.* at MB-000021. The CI saw the defendant remove a handgun from a hidden compartment in the trunk of his mother's car. *Id.* The CI stated that it was the same gun the defendant had used in the February 20, 2010 vehicular shooting. *Id.* The defendant put the gun in his pants pocket. *Id.* at MB-000022. The defendant and the CI began to argue about the defendant carrying the gun on his person. *Id.*

The CI and the defendant continued to walk; then two young Hispanic males, approximately ten or eleven years old, approached the defendant. *Id.* One of the young men said something to the defendant like "[t]hese fools moved in up here." *Id.* The defendant told the CI to go "wherever [she] needed to go." *Id.* Less than two minutes later, the CI heard what she thought were two gunshots. *Id.* The CI proceeded to a nearby store. *Id.* Approximately ten minutes later, the defendant arrived at the store in a vehicle with some of his friends. *Id.* at MB-000023.

The next day, the defendant told the CI that he shot into a house "for the cause." *Id.* The CI took this to mean that the defendant shot into the home of a rival gang member to enhance his standing in the C Street Gang. *Id.*

After the CI told the police the preceding information, the police investigated the defendant, including verifying his current address, his vehicle registrations, and his gang affiliations. *Id.* at MB-000023-30.

On October 19, 2010, the police sought and obtained a warrant to search the defendant's home, two cars associated with the defendant, and the defendant's person. Boisseau Decl. Ex. A. The warrant sought, *inter alia*, firearms and their accessories; a black hooded sweatshirt, black jeans, and a black baseball cap with a red logo; and evidence of gang membership.

On October 26, 2010, the police executed the search warrant and seized a .25 caliber silver handgun with wooden handles with a loaded magazine, a receipt for gun parts with the defendant's name on it, a silver box with the defendant's gang moniker on it, and photographs of gang members, among other items. *Id.* at MB-000044-45.

4

The defendant now moves to suppress all evidence seized during the execution of the search warrant, arguing: (1) the affidavit in support of the search warrant omitted material facts bearing on probable cause; (2) there was insufficient probable cause to support a search warrant; (3) any existing probable cause was stale; and (4) the warrant was insufficiently particular.

**LEGAL STANDARD**

Under the Fourth Amendment, a search warrant may not issue without probable cause. U.S. Const. amend. IV. Probable cause exists where the issuing judge can determine that there is a "fair probability" that the evidence sought will be found in the place searched. *Illinois v. Gates*, 462 U.S. 213, 238 (1983) ("The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place."). In determining whether a search warrant was based upon probable cause, the district court is "limited to the information and circumstances contained within the four corners of the underlying affidavit." *United States v. Stanert*, 762 F.2d 775, 778 (9th Cir. 1985), *amended on other grounds*, 769 F.2d 1410 (9th Cir. 1985).

Moreover, "the Fourth Amendment categorically prohibits the issuance of any warrant except one 'particularly describing the place to be searched and the persons or things to be seized.'" *Maryland v. Garrison*, 480 U.S. 79, 84 (1987) (quoting U.S. Const. amend. IV). Whether a warrant is insufficiently particular is judged on the basis of those facts which the officers knew or should have known at the time the warrant was issued. *Id.* at 85.

Review of a determination that a warrant was supported by probable cause is deferential; "the duty of a reviewing court is simply to ensure that the magistrate had a 'substantial basis for . . . conclud[ing]' that probable cause existed." *Gates*, 462 U.S. at 238-39 (alteration in original); *see also United States v. Kelley*, 482 F.3d 1047, 1050 (9th Cir. 2007) ("Normally, we do not 'flyspeck' the affidavit supporting a search warrant through de novo review; rather, the magistrate judge's determination should be paid great deference." (internal quotation marks omitted)).

5

**DISCUSSION**

The defendant contends that evidence seized pursuant to the October 19, 2010 search warrant must be suppressed. He argues: (1) the warrant affidavit was defective because it failed to include statements made by witnesses to the March 26, 2010 shooting; (2) there was no probable cause to believe that firearms or evidence of gang indicia would be found in the place searched; (3) even if there was probable cause to search at one time, by the time the warrant was obtained and executed, any probable cause was stale; and (4) the warrant lacked particularity in its description of what evidence of gang membership it sought. The Court will address each argument in turn.

**1.     Omission of Witness Statements.**

The defendant argues that the search warrant was defective because the affiant failed to include witness statements regarding the March 26, 2010 shooting that contradicted the statements made by the CI. The defendant requests a *Franks* hearing on the issue.

A defendant is entitled to an evidentiary hearing regarding the validity of a search warrant only if he makes a preliminary showing that: (1) the affiant intentionally or recklessly included a false statement in the warrant application; and (2) the false statement was material to the issuing judge's determination of probable cause. *Franks v. Delaware*, 438 U.S. 154, 155-56 (1978). Material omissions can likewise form the basis of a *Franks* hearing. *Stanert*, 762 F.2d at 781. The defendant bears the burden of proof, and must make a "substantial showing" as to both the required mental state of the affiant, and the materiality of the alleged misstatements or omissions. *United States v. Chavez-Miranda*, 306 F.3d 973, 979 (9th Cir. 2002).

The defendant has not made the required showing in this case. The statements the defendant contends should have been included in the warrant affidavit are as follows: the statement by a witness to the shooting that she saw a young Hispanic male, between 130-150 pounds, wearing dark clothing and holding a possibly black gun at the scene of the shooting, and the statement by a resident of the home that he saw two Hispanic youths near his home approximately thirty minutes prior to the shooting. The defendant argues that these statements contradict the CI's statement that the defendant was the

6

1 shooter because the defendant does not fit the descriptions the witnesses gave. The defendant is a white
2 male, 5'5" tall and weighing 210 pounds.

3 However, the witness statements do not actually contradict what the CI told police. According
4 to the CI's statement, the defendant removed a gun from the trunk of his mother's car on the evening
5 of March 26, 2010. As the CI and the defendant walked, the defendant encountered two young Hispanic
6 males. The defendant told the CI to go about her business and the defendant departed with the two
7 Hispanic males. The witnesses reported seeing one or two Hispanic males, respectively, near the
8 residence around the time of the shooting. Although neither witness described the defendant, their
9 statements are not inconsistent with the scenario the CI described. Thus, the witness statements do not
10 contradict the CI's statement; they corroborate it.

11 Even if the witness statements were inconsistent with the CI's statement, that would still not be
12 enough to sustain the defendant's burden under *Franks*. Instead, the defendant must prove both that the
13 affiant intentionally or recklessly omitted facts from the affidavit, and that those omissions were
14 material to the finding of probable cause. *Franks*, 438 U.S. at 155-56; *Stanert*, 762 F.2d at 781. The
15 defendant fails on both prongs.

16 First, the defendant has not established that the affiant's omission of the witness statements was
17 intentional or reckless. Considering the facts set forth in the police reports and the affidavit itself, the
18 affiant could well have concluded that the CI was trustworthy, and that the witness descriptions of the
19 individuals the CI described as accompanying the defendant were irrelevant to the probable cause
20 determination. Thus, the defendant has not met his burden of establishing that the affiant made any
21 omissions with the requisite mental state.

22 Second, the defendant has not established that the omission of the witness statements was
23 material to the probable cause finding. The affidavit included numerous facts in support of probable
24 cause. For example, the affiant described both the defendant's and the CI's versions of the vehicular
25 shoot-out. *See* Boisseau Decl. Ex. A, at MB-000012-20. He stated that, on February 23, 2010, the
26 police recovered the other vehicle, the Ford Explorer, and found two bullet holes and a fragmented
27 bullet inside it, corroborating the CI's version of events. *Id.* at MB-000020. The most compelling fact
28 the affiant provided was that the fragmented bullet recovered from the Explorer matched the bullet

7

1 recovered from the residence that was the subject of the March 26, 2010 shooting; that is, they were both
2 fired from the same gun. *Id.* at MB-000023. Based on the matching bullets, the issuing judge had a
3 substantial basis for finding there was probable cause to search the defendant's residence, vehicles, and
4 person, even discounting the CI and witness statements about the particular sequence of events on
5 March 26, 2010. *See Gates*, 462 U.S. at 238-39. Therefore, the omission of the witness statements was
6 not material to the probable cause finding.

7 Accordingly, the Court finds that the omission of the witness statements from the warrant
8 affidavit does not satisfy the *Franks* standard.

### 2. Probable Cause for the Warrant to Issue.

The defendant next argues that the warrant application failed to establish probable cause that a .25 caliber firearm and items of gang indicia would be found at the defendant's residence.

Probable cause exists if the issuing judge can reasonably conclude, based on the totality of the circumstances, that there is a fair probability that the evidence sought will be found in the place to be searched. *Gates*, 462 U.S. at 238. Probable cause does not require direct evidence that the evidence sought will be found in the place searched. *United States v. Angulo–Lopez*, 791 F.3d 1394, 1399 (9th Cir. 1986). Instead, the issuing judge "is entitled to draw reasonable inferences about where evidence is likely to be kept, based on the nature of the evidence and the type of offense." *Id.*

The evidence here provided a substantial basis for the issuing judge to find that there was a fair probability that a .25 caliber gun would be found in the execution of the search warrant. The CI told police that she saw the defendant fire two shots from a .25 caliber gun on February 20, 2010, during the vehicle chase. Boisseau Decl. Ex. A, at MB-000019. The CI's statement was corroborated by the discovery of two bullet holes and a fragmented bullet from the Ford Explorer. *Id.* at MB-000020. The CI also told police that the defendant regularly kept a gun in the hidden storage compartment in the trunk of his mother's car, which the defendant often drove during the evening hours. *Id.* at MB-000021. The CI also stated that, on the evening of March 26, 2010, the gun she saw the defendant remove from that hidden storage compartment was the same gun that she saw the defendant fire on the evening of February 20, 2010. *Id.* This statement was later corroborated when police determined that the

8

1 fragmented bullet recovered from the Ford Explorer was fired from the same gun that later shot into the
2 residence on March 26, 2010. *Id.* at MB-000023. Based on the totality of this evidence, the issuing
3 judge had a substantial basis for concluding that there was probable cause that a .25 caliber gun would
4 be found during a search of the defendant's home, vehicles, and person.

The affidavit was also sufficient for the issuing judge to conclude that evidence of gang membership would be found during the execution of the search warrant. The affidavit contained numerous details supporting the affiant's conclusion that the defendant was likely associated with the C Street gang. *See id.* at MB-000028-30. It also set forth the basis for the affiant's belief that gang members often keep items related to their gang membership in their homes. *Id.* at MB-000030-31. This information provided a substantial basis for the issuing judge's conclusion that there was a fair probability that items of gang indicia would be found in the places to be searched.

Accordingly, the Court finds that the search warrant was supported by probable cause.

### 3. Staleness of the Probable Cause.

The defendant next argues that, even if probable cause existed for the search at one time, by the time the warrant was sought and executed, any probable cause was stale.

"The mere lapse of substantial amounts of time is not controlling in a question of staleness." *United States v. Dozier*, 844 F.2d 701, 707 (9th Cir. 1988) (citing *United States v. Foster*, 711 F.2d 871, 878 (9th Cir. 1983), *cert. denied*, 465 U.S. 1103 (1984)). The Court must evaluate staleness in the context of the particular facts of the case, and the nature of the alleged crimes. *See United States v. Greany*, 929 F.2d 523, 525 (9th Cir. 1991). "One may properly infer that equipment acquired to accomplish the crime and records of the criminal activity will be kept for some period of time." *Id.* This is particularly true when the evidence sought is related to an ongoing criminal enterprise. *Id.*

The Court concludes that the probable cause was not stale at the time the warrant was sought and executed. The items sought in the search warrant were not of a transient nature. Indeed, clothing, firearms, and gang indicia are the types of items that are generally kept for a long time before they are discarded. *Cf. United States v. Singer*, 943 F.2d 758, 763 (7th Cir. 1991) (upholding a no-knock entry based on six-month-old information, and stating that "firearms, unlike drugs, are durable goods useful

9

1  to their owners for long periods of time"); Boisseau Decl. Ex. A at MB-000031 (stating that, even
2  following arrests, gang members retain items of gang indicia "because they have such a strong value
3  to them"). Less than seven months had elapsed since the residential shooting, and less than two months
4  had elapsed since the CI gave her statement to the police. Additionally, the evidence sought was related
5  to an investigation into an ongoing criminal enterprise – the activities of the C Street gang. The Court
6  cannot say that the lapse of this amount of time rendered the probable cause stale in this case. *See, e.g.*,
7  *United States v. Collins*, 61 F.3d 1379, 1384-85 (9th Cir. 1995) (citing cases from around the country
8  holding that the mere lapse of time, ranging from two and a half weeks up to nine months, does not
9  render probable cause stale in firearms cases).

10  Accordingly, the Court finds that the issuing judge could reasonably have concluded that the
11  probable cause was not stale in this case.

### 4. Particularity of the Search Warrant.

Finally, the defendant argues that the warrant lacked particularity in its description of the gang indicia it sought.

The Fourth Amendment requires that a search warrant's description of the things to be seized be "specific enough to enable the person conducting the search reasonably to identify the things authorized to be seized." *United States v. Spilotro*, 800 F.2d 959, 963 (9th Cir. 1986). How specific the description need be varies according to the circumstances of the case, and the types of items the warrant seeks. *Id.* To determine whether a warrant is sufficiently particular, a court may look to one or more of the following factors: (1) "whether probable cause exists to seize all items of a particular type described in the warrant," (2) "whether the warrant sets out objective standards by which executing officers can differentiate items subject to seizure from those which are not," and (3) "whether the government was able to describe the items more particularly in light of the information available to it at the time the warrant was issued." *Id.* (citations omitted). Gang indicia, by its nature, is not amenable to a detailed description. *United States v. Cerna*, No. CR 08-0730 WHA, 2010 WL 3749449, at *14 (N.D. Cal. Sept. 22, 2010) ("By its nature, gang-related indicia may include a broad swath of 'everyday'

10

or 'ordinary' items that only become gang-related indicia in certain contexts or once certain modifications or inscriptions are made to the items.").

The Court finds that the search warrant was sufficiently particular with regard to gang indicia. The warrant permitted police to search for "evidence of street gang membership, association or affiliation with any street gang, particularly with reference to 'C Street' or Norteno [sic] Hispanic Criminal Street Gang." Boisseau Decl. Ex. A, at MB-000003. The paraphernalia sought was to include "reference to the street gang . . . paintings, drawings, videotapes, photographs, photograph albums or any form of visual media depicting persons, vehicle, weapons or locations that are relevant to gang membership or association . . . writings or graffiti depicting gang member's names, initials, logos, monikers, slogans or containing mention of street gang membership . . . ." *Id.* at MB-000003-04. The warrant affidavit also contained information describing gang indicia, and detailing the types of items generally related to gang indicia. *Id.* at MB-000030-31. Given the nature of the items sought, it would not have been possible to describe "gang indicia" with more particularity. *See Cerna*, 2010 WL 3749449, at *14.

Accordingly, the Court finds that the warrant's description of the gang indicia it sought was sufficiently particular.

## CONCLUSION

For the foregoing reasons and for good cause shown, and on the basis of the record before it, the Court hereby DENIES the defendant's motion to suppress evidence. This Order resolves Docket No. 888.

**IT IS SO ORDERED.**

Dated: March 21, 2014

SUSAN ILLSTON
UNITED STATES DISTRICT JUDGE

11